GERALD SAYER AND ELIZABETH SAYER, HUSBAND AND WIFE, APPELLANTS, V. LAWRENCE V. BOWLEY AND GERTRUDE C. BOWLEY, HUSBAND AND WIFE, APPELLEES.
503 N.W.2d 166

Filed July 23, 1993.   No. S-90-1161.

John A. Gale, of McCarthy & Gale, for appellants.

P. Stephen Potter for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.
Gerald Sayer and Elizabeth Sayer appeal, among other things, the district court's rulings which denied them

contract-based recoveries in their suit against Lawrence V. Bowley and Gertrude C. Bowley. Pursuant to a jury verdict, the Sayers were awarded $62,844 under a cause of action for a statutory lien. We affirm in part, and in part reverse, and remand with directions.

In late 1988 and early 1989, Gerald Sayer and Lawrence Bowley discussed the Sayers' purchase of the Bowleys' farm. Eventually, Bowley asked his attorney to memorialize the terms of the discussions. This "agreement" was revised several times, but no version was signed by both parties.

According to the Sayers, in reliance on the "contract," they paid the Bowleys $25,000 in earnest money, took possession of the property, made arrangements to farm the land, and incurred a variety of expenses in their preparations. The record indicates that Lawrence Bowley was aware of the Sayers' preparatory actions.

When the parties failed to agree on a contract, the Sayers brought suit requesting specific performance and seeking recovery for unjust enrichment. The Sayers argue that the statute of frauds does not bar enforcement of the oral contract due to part performance or equitable estoppel. After pretrial discussions in which the court apparently raised the idea, the Sayers requested the appointment of a receiver to ensure the harvesting of the various crops. The court later discharged the receiver, who was awarded a fee.

As the proceedings moved forward, the district court ordered the return of the Sayers' earnest money. The court also bifurcated the issues for trial. After the initial trial, at which certain contractual issues were heard, the court found generally in favor of the Bowleys. The court determined that the Sayers had not adequately proved the existence or terms of the alleged oral contract and that, thus, the Sayers could not prevail on the issues of breach of contract and specific performance. The Sayers then filed an amended petition, realleging the cause of action for specific performance and seeking damages for loss of the "benefit of the bargain." The petition also alleged several other causes of action, including statutory lien.

Upon request of the Bowleys, the court struck the Sayers' cause of action based on loss of the benefit of the bargain.

Later, the court dismissed that cause of action at trial.

Following a jury trial, the Sayers were awarded, inter alia, $62,844 under the cause of action for statutory lien. The court awarded the Sayers prejudgment interest on this amount at 6 percent, pursuant to Neb. Rev. Stat. § 45-102 (Reissue 1988). The Sayers were also required to pay the entire receiver's fee of $11,386. The Bowleys were awarded $35,280 on a counterclaim. This appeal followed.

Restated, the Sayers allege that the district court erred by (1) ruling that they could not prevail on the issues of specific performance or equitable estoppel; (2) striking their cause of action which sought damages for loss of the benefit of the bargain and dismissing that cause of action at trial; (3) charging them with the entire receiver's fee; and (4) awarding them prejudgment interest of 6 percent, rather than the 12 percent provided for in Neb. Rev. Stat. § 45-104 (Reissue 1988).

An action for specific performance sounds in equity. *Frenzen v. Taylor*, 232 Neb. 41, 439 N.W.2d 473 (1989); *Satellite Dev. Co. v. Bernt*, 229 Neb. 778, 429 N.W.2d 334 (1988). As such, we apply the following standard of review:

> When an equity case is appealed from the district court, the appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court. When the evidence conflicts, however, the appellate court may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

*McCook Nat. Bank v. Myers, post* p. 853, 858, 503 N.W.2d 200, 204 (1993). Accord, *Eliker v. Chief Indus., ante* p. 275, 498 N.W.2d 564 (1993). We turn to the Sayers' arguments.

The Sayers' first two assignments of error each relate to the propriety of the district court's rulings on the enforceability of the oral agreement and combine to allege that (1) an oral contract was entered into by the Sayers and the Bowleys and (2) in spite of the statute of frauds, that oral contract is enforceable. As to the second portion of their argument, the Sayers assert that the contract may be enforced either because of their part performance or because the Bowleys' actions

equitably estop them from asserting the statute of frauds as a defense.

The Sayers correctly note that an oral agreement for the sale of land is void. See Neb. Rev. Stat. § 36-105 (Reissue 1988). However, before analyzing the effect of part performance and equitable estoppel on this case, we first must determine whether an adequate contract existed to be enforced in equity.

Initially, we note that the Sayers' petition is less than clear as to the agreement they seek to enforce. Although it alleges that the oral agreement arose on April 20, 1989, the petition requests enforcement of a draft contract, an instrument approximately 2 months and five versions removed from the alleged April 20 agreement. Presumably, the Sayers are asserting that the final draft is reflective of the terms of that initial understanding and should thus be enforced.

Our previous decisions provide insight as to the rules and requirements involved in actions for specific performance of contracts. The first requirement is the existence of a valid, legally enforceable contract. The burden of establishing the contract is on the party seeking its specific performance. *Satellite Dev. Co., supra; Rybin Investment Co., Inc. v. Wade*, 210 Neb. 707, 316 N.W.2d 744 (1982). That party must thus show that there was a definite offer and an unconditional acceptance. Moreover, for a binding contract to result from an offer and acceptance, the minds of the parties must meet at every point; nothing can be left open for future arrangement. *Logan Ranch v. Farm Credit Bank*, 238 Neb. 814, 472 N.W.2d 704 (1991); *Satellite Dev. Co., supra; Rybin Investment Co., Inc., supra*. Finally, "[a] contract for the transfer of real property is valid and enforceable if the agreement contains the essential elements of a contract with sufficient certainty and definiteness as to the parties, property, consideration, terms, and time of performance." *Satellite Dev. Co.*, 229 Neb. at 781, 429 N.W.2d at 337.

Applying the foregoing rules to the case before us, we agree with the district court that the Sayers failed to establish the existence of a contract definite enough to be specifically enforced. Ignoring for the moment the oral nature of the parties' "agreement," we hold that the evidence was

insufficient to establish a meeting of the minds on several material terms of the contract. Although a complete review of the disparate terms is unnecessary, we will summarize some of the major inconsistencies.

The first major problem with the Sayers' arguments relates to the nature of the agreement itself. Based on the evidence, any oral understanding between the parties sounds very much like an "agreement to agree" rather than a complete contract that could simply be memorialized at a later time. Such an agreement would not be an enforceable contract. See *Alward v. United Mineral Products Co.*, 197 Neb. 658, 661, 250 N.W.2d 623, 625 (1977) ("[a]n agreement to make a future contract is not binding upon either party unless all terms and conditions are agreed upon and nothing is left to future negotiation").

In their petition, the Sayers allege that the parties had reached an oral agreement, "the terms of which agreement were to be placed in a formal written contract and executed by the parties." While this statement hints that a writing may have been one of the essential terms of the agreement—a term never satisfied—it may also be read as a statement that all material terms had been agreed upon and could simply be placed in written form. The subsequent dealings between the parties, however, belie this notion.

As noted before, following the parties' initial discussions, a contractual document was drafted. This document was not signed, but was changed to reflect disagreements as to terms. Four more drafts, reflecting further revisions, followed. The last draft is the version the Sayers seek to enforce.

When we compare the terms of the initial draft with those of the final draft, it is apparent that during their initial oral discussions, not all material terms had been discussed, or agreed upon, by the parties. For example, only *after* the initial draft did the Sayers become aware of an outstanding mortgage on the realty and a security interest on some of the Bowleys' personal property. However, provisions in that first draft indicated that other encumbrances had been discussed by the parties, as well as which party would be obligated thereon. This indicates that from the outset, the parties had considered encumbrances material enough to warrant discussion and

memorialization. The Sayers' apparent ignorance of one such encumbrance evidences a lack of agreement on a material term.

Furthermore, the record does not indicate that prior to the drafting of the contracts, the parties had agreed on the method of financing the transaction, i.e., whether the note would be secured by deed of trust, mortgage, or installment land contract. Finally, the initial and final draft contracts contain contrary provisions regarding the Sayers' right to prepay the note. The district court also noted a number of other discrepancies between the drafts which we need not list here. Suffice it to say that the conduct of the parties during the drafting of these documents indicates that several important terms had not been discussed or agreed upon at the time of the alleged oral agreement. It matters not that several of the disputes were resolved during the drafting stage. The parties did not sign any of the written contracts; the alleged oral agreement of April 20 is the focus of our concern.

Nor does it matter that the parties apparently did agree on the purchase price, realty, and some terms of payment. The various draft contracts indicate that the amount of downpayment was not always settled. Unlike the situation in a case involving contracts for the sale of goods, we will not read unsettled terms into contracts for the sale of land, especially oral contracts sought to be specifically enforced. We have previously stated that

> [a] court of equity will not enforce a contract unless it is complete and certain in all its essential elements. The parties themselves must agree upon the material and necessary details of the bargain, and if any of these be omitted, or left obscure or indefinite, so as to leave the intention of the parties uncertain respecting the substantial terms, the case is not one for specific performance. It is not a function of a court of equity to make a contract for the parties or to supply any of the material stipulations thereof.

*Reifenrath v. Hansen*, 190 Neb. 58, 62, 206 N.W.2d 42, 44 (1973).

We agree with the district court that the Sayers failed to meet their burden of showing the existence of an oral contract

definite enough in its terms to be specifically enforced. The Sayers' arguments to the contrary are without merit.

With this holding in mind, the Sayers' first two assignments of error are easily answered. In their first assignment, they contend that the district court erred by ruling that they were not entitled to specific performance based on part performance or equitable estoppel. We address these theories in order.

Despite the statute of frauds, an oral contract may be specifically enforced in cases of part performance. Neb. Rev. Stat. § 36-106 (Reissue 1988). However,

> [w]e have consistently required that a party seeking specific performance of an oral contract for the sale of real estate upon the basis of part performance must prove an oral contract, the terms of which are clear, satisfactory, and unequivocal, and that the acts done in part performance were referrable solely to the contract sought to be enforced . . . .

(Emphasis supplied.) Reifenrath, 190 Neb. at 63, 206 N.W.2d at 45. Accord, Yates v. Grosh, 213 Neb. 164, 328 N.W.2d 200 (1982).

The preceding language refutes the Sayers' argument that the alleged oral contract should be specifically performed. They have not proven the existence of an oral contract or its terms clearly and unequivocally; therefore, we need not reach the issue of the applicability of the doctrine of part performance.

The same holds true for the applicability of equitable estoppel. The Sayers argue that "[t]he doctrine of equitable estoppel precludes Bowley from asserting the defense of the statute of frauds." Brief for appellant at 35. However, we have already found that regardless of the statute of frauds, the Sayers have failed to prove the existence of an oral contract definite enough to be specifically performed. Irrespective of whether equitable estoppel is applied, the Sayers are not entitled to specific performance of the contract.

In their second assignment of error, the Sayers argue that the district court erred by striking the Sayers' cause of action which sought damages for loss of the benefit of the bargain and by dismissing that cause of action at trial. We disagree. Without a contract, the Sayers suffered no loss of any bargain. No such

cause of action arose in this case. The district court did not err in striking the cause of action from the petition and dismissing it at trial.

The Sayers next argue that the district court erred by requiring them to pay the entire receiver's fee of $11,386. Again, we disagree.

Just as the determination of the amount of a receiver's compensation is a matter within the discretion of the trial court, so too is the determination of who should bear the expenses associated with the receivership. The court's decision will not be disturbed on appeal absent an abuse of discretion. See, *State ex rel. Beck v. Associates Discount Corp.*, 168 Neb. 298, 96 N.W.2d 55 (1959), *reh'g denied and opinion modified* 168 Neb. 803, 97 N.W.2d 583, *overruled on other grounds, Dailey v. A. C. Nelsen Co.*, 178 Neb. 881, 136 N.W.2d 186 (1965); *Lowder v. All Star Mills, Inc.*, 85 N.C. App. 329, 354 S.E.2d 765 (1987); *Theatres of America, Inc. v. State*, 577 S.W.2d 542 (Tex. Civ. App. 1979).

Based on the record, we cannot say that the district court abused its discretion by requiring the Sayers to pay the entire receiver's fee. We realize that the case contains many competing equities. For instance, although the Sayers requested the appointment of the receiver, the district court initially raised the idea. The Bowleys objected to the appointment. Furthermore, although the receiver was effectively protecting approximately $87,000 in expenditures by the Sayers, the Bowleys ultimately received the proceeds of the crops. Finally, each party alleges that the delay necessitating the appointment of the receiver was caused by the other party.

This case does not present a situation in which one party should clearly be required to pay the receivership expenses. See *Theatres of America, Inc., supra* (assigning receivership expenses to the party whose wrongdoing necessitated the receiver's appointment). We find the evidence to be in equipoise as to which party should bear the burden. However, based on our standard of review and our tradition of deference to district court determinations in situations of this sort, we will not disturb the court's ruling on the matter. See *McCook Nat. Bank v. Myers, post* p. 853, 503 N.W.2d 200 (1993). We dispose

of the Sayers' third assignment of error.

In their final assignment of error, the Sayers allege that the district court erred by granting them, on their statutory lien recovery, prejudgment interest at an inadequate rate. The Sayers argue that instead of applying the 6-percent rate from § 45-102, the court should have awarded them prejudgment interest at a rate of 12 percent, pursuant to § 45-104. We find it unnecessary to resolve the dilemma of which interest rate should apply, for, though the issue was not raised by either party, it is clear that *any* award of prejudgment interest was erroneous.

> Although an appellate court does not consider assignments of error not listed and discussed in the briefs, it always reserves the right to note plain error which was not complained of at trial or on appeal but is plainly evident from the record, and which is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

*In re Interest of D.M.B.*, 240 Neb. 349, 351, 481 N.W.2d 905, 908-09 (1992) (citing *In re Interest of G.G. et al.*, 237 Neb. 306, 465 N.W.2d 752 (1991)).

This court has previously held that in order to receive prejudgment interest, a litigant must comply with Neb. Rev. Stat. § 45-103.02 (Reissue 1988). *Elson v. Pool*, 235 Neb. 469, 455 N.W.2d 783 (1990); *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989). See, also, *Pugh v. Great Plains Ins. Co.*, 239 Neb. 171, 474 N.W.2d 677 (1991). Section 45-103.02, which applies to all causes of action accruing on or after January 1, 1987, provides, in relevant part:

> [J]udgment interest shall also accrue on decrees and judgments for the payment of money from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the rendition of judgment if all of the following conditions are met:
>
> (1) The offer is made in writing upon the defendant by certified mail, return receipt requested, to allow judgment to be taken in accordance with the terms and conditions stated in the offer;
>
> (2) The offer is made not less than ten days prior to the

commencement of the trial;

(3) A copy of the offer and proof of delivery to the defendant in the form of a receipt signed by the party or his or her attorney is filed with the clerk of the court in which the action is pending; and

(4) The offer is not accepted prior to trial or within thirty days of the date of the offer, whichever occurs first.

The Sayers' cause of action did not accrue until 1989, so § 45-103.02 clearly applies. See Neb. Rev. Stat. § 52-1406 (Reissue 1988). Furthermore, the record contains no evidence that the statute was complied with. Thus, the Sayers were not entitled to any prejudgment interest on their judgment. See, *Elson, supra*; *Knox, supra*. The district court's award of such interest was error.

We affirm the district court's rulings that the Sayers were not entitled to specific performance of the alleged oral agreement and its orders striking their cause of action for damages for loss of the benefit of the bargain. We also affirm the court's determination as to payment of the receiver's fee. However, we reverse the district court's award of prejudgment interest to the Sayers. We remand the cause to the district court with directions to enter judgment in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.