LESLIE D. SCHLAKE, M.D., APPELLANT AND CROSS-APPELLEE, V. LOREN H. JACOBSEN, M.D., AND CENTRAL NEBRASKA MEDICAL CLINIC, P.C., APPELLEES AND CROSS-APPELLANTS.

524 N.W.2d 316

Filed December 2, 1994. No. S-93-251.

Robert E. Wheeler for appellant.

Robert P. Chaloupka, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellees.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

LANPHIER, J.

Leslie D. Schlake, M.D., brought this action against Loren H. Jacobsen, M.D., and the Central Nebraska Medical Clinic, P.C. (Clinic). In Schlake's amended petition, filed in the district court for Custer County, he (1) alleged that Jacobsen and the Clinic breached a stock redemption agreement, (2) alleged that Jacobsen and the Clinic breached an oral agreement concerning a billing system, (3) alleged that Jacobsen and the Clinic breached an employment agreement, and (4) sought to have a billing contract construed and reformed. The trial court granted summary judgment for the defendants on the second and fourth causes of action and on parts of the third cause of action. A jury trial on the remaining causes of action resulted in a $75,000 verdict for Schlake.

## BACKGROUND

In 1973, Jacobsen and a Dr. M.L. Chaloupka formed the Clinic and were the only shareholders. Later in the 1970's, Dr. Douglas Holtmeier bought into the Clinic. Subsequently, Chaloupka died and Holtmeier resigned. As of July 21, 1985, when Schlake was hired by the Clinic, the Clinic was in the process of paying Chaloupka's estate and Holtmeier for the value of their respective shares of the Clinic. In 1989, after Chaloupka's estate and Holtmeier were paid off, Schlake bought into the Clinic. Schlake paid $50,000 for 33 1/3 shares of the Clinic pursuant to a stock purchase agreement. In 1991, Schlake resigned and commenced this action.

Schlake resigned after a dispute with Jacobsen concerning payments made by the Clinic to Jacobsen for computers, software, and billing services pursuant to a contract referred to as the "P.C. Billing Agreement." Schlake charged Jacobsen with overbilling the Clinic. Schlake wanted Jacobsen to reimburse the Clinic for the amount of the alleged overbilling, and Jacobsen refused.

## FIRST CAUSE OF ACTION

After his resignation, Schlake exercised his option for stock

redemption pursuant to the stock redemption agreement. In his petition, Schlake claims that Jacobsen and the Clinic breached the stock redemption agreement by failing to tender payment for his stock. Schlake claims he is owed $100,000 for his stock. Jacobsen disputes that $100,000 is the redemption price for Schlake's $33\frac{1}{3}$ shares, but admits that Schlake is owed at least $50,000 for Schlake's stock.

### SECOND CAUSE OF ACTION

Schlake contends that he is owed $64,751.88 and interest thereon in the amount of $18,837.69, for the breach of an oral agreement. Schlake alleges Jacobsen agreed to terminate the P.C. billing agreement once Jacobsen recovered his investment in the computer billing system. According to Schlake, Jacobsen received a reasonable rate of return on his investment, 16 percent per annum, on October 1, 1987. Schlake therefore contends that payments of $150,585.77, made by the Clinic to Jacobsen after October 1, were in violation of the agreement and should not have been deducted from gross profits in calculating the amount owed to Schlake.

The significance of this alleged breach is derived from the terms of Schlake's employment agreement. In addition to a base salary of $18,000, Schlake was to receive a percentage of the quarterly net income equal to the percentage of gross income he produced. The payments under the terms of the P.C. billing agreement reduced the Clinic's quarterly net income and, consequently, Schlake's income.

### THIRD CAUSE OF ACTION

The third cause of action, entitled "Breach of Employment Agreement," has four parts. Schlake maintains that Jacobsen and the Clinic have breached the terms of his employment agreement (1) by retaining profits of $199,689, (2) by failing to terminate the P.C. billing agreement when Jacobsen recovered his investment, (3) by paying Jacobsen under the terms of the P.C. billing agreement after its expiration and thereby reducing the Clinic's net income and consequently reducing Schlake's income under his employment agreement, and (4) by failing to pay Schlake's medical malpractice insurance after his resignation.

## FOURTH CAUSE OF ACTION

Finally, Schlake maintains that the terms of the P.C. billing agreement were contrary to those authorized by the Clinic as evidenced by the minutes of a special board of directors meeting. Schlake contends that the P.C. billing agreement is therefore void.

## ASSIGNMENTS OF ERROR

Schlake asserts that the district court erred (1) in failing to grant his motions for summary judgment on each of the four causes of action, (2) in granting Jacobsen and the Clinic's motion for summary judgment on the second and fourth causes of action, (3) in overruling Schlake's objection to Jacobsen and the Clinic's late answer, (4) in granting Jacobsen and the Clinic's motion for summary judgment on parts of Schlake's third cause of action, and (5) in refusing to grant Schlake's motion for prejudgment interest.

## STANDARD OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *In re Estate of Wagner, ante* p. 625, 522 N.W.2d 159 (1994); *Zwingman v. Kallhoff*, 244 Neb. 514, 507 N.W.2d 894 (1993); *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992); *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992). Moreover, summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *In re Estate of Wagner, supra*; *Zwingman, supra*; *Murphy, supra*; *Moore v. Hartford Fire Ins. Co.*, 240 Neb. 195, 481 N.W.2d 196 (1992); *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992).

A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must furnish sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence

presented remains uncontroverted. After the moving party has shown facts entitling it to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 243 Neb. 351, 500 N.W.2d 520 (1993); *Howard v. Blue Cross Blue Shield*, 242 Neb. 150, 494 N.W.2d 99 (1993).

## SUMMARY JUDGMENT

Schlake's first contention on appeal is that the district court erred in failing to grant his motion for summary judgment on each of his four causes of action. Because the first and third causes of action were treated the same procedurally, they will be discussed together. Thereafter, the second and fourth causes of action will be discussed.

### FIRST AND THIRD CAUSES OF ACTION

Asserting that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law, Jacobsen and the Clinic moved for summary judgment on the second, third, and fourth causes of action. Then Schlake moved the district court for summary judgment on each of his four causes of action. After Schlake filed his motion for summary judgment, he moved to amend his petition concerning the first and third causes of action. The district court heard Jacobsen and the Clinic's motion for summary judgment at the same time as Schlake's motion to amend. Schlake's motion to amend the first and third causes of action contained in his petition was granted. The district court also ruled on the motions for summary judgment on the second and fourth causes of action only. No ruling on Schlake's motion for summary judgment on the first and third causes of action appears in the record.

> [W]here the moving party, before the determination of the motion, proceeds in the action in a manner inconsistent with the object of the motion, the latter is abandoned or waived, as by making an inconsistent motion in the cause, by going to trial on the merits, or by taking some step in the cause, before the hearing of the motion, which renders the motion unnecessary.

60 C.J.S. *Motions & Orders* § 42 at 63 (1969).

We have held that an appellant may not predicate error on a motion not ruled upon. *State v. Blair*, 227 Neb. 742, 419 N.W.2d 868 (1988). See, also, *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 235 Neb. 207, 454 N.W.2d 671 (1990) (where no ruling appeared to have been made on motion, it was presumed that motion was waived or abandoned); *Dewey & Stone v. Lewis*, 12 Neb. 306, 11 N.W. 330 (1882) (held that no case was presented for review where for no apparent reason motion was not acted upon, and no bill of exceptions was filed). In this case, the filing of the motion to amend was inconsistent with the motion for summary judgment and constituted a de facto abandonment of the prior motion for summary judgment. In any event, summary judgment on the first cause of action would have been inappropriate, as a genuine issue of material fact was raised by the conflicting evidence on the redemption price.

The trial court did, however, rule on Jacobsen and the Clinic's motion for summary judgment, filed after the amended petition, concerning parts of Schlake's third cause of action. The trial court granted summary judgment for Jacobsen and the Clinic on those parts entitled "Breach of Oral Agreement to Terminate Lease Upon Recovery of Investment" and "Breach of P.C. Billing Agreement." The trial court granted the motion, concluding that the claims made in these parts of the third cause of action were identical to those made in the second and fourth causes of action. We agree. Following is our determination on those issues.

## SECOND CAUSE OF ACTION

Now, we address Schlake's assignments of error concerning the district court's granting of summary judgment in favor of Jacobsen and the Clinic on the second cause of action. In his second cause of action, Schlake maintained that Jacobsen and the Clinic breached an oral agreement. Schlake alleged that the oral agreement was not the same as, but concerned, Jacobsen's billing agreement with the Clinic. Under the billing agreement, the Clinic leased from Jacobsen a computer and software designed to conduct the Clinic's billing. In his amended

petition, Schlake specifically alleged the following:

17. That plaintiff [Schlake] first negotiated with the defendants concerning employment with them in the Fall of 1984; that at that time the parties discussed the matter of a certain computer separately owned by Dr. Jacobsen and rented to the Clinic for purposes of billing.

18. That in the course of the negotiations for employment in the Fall of 1984 the plaintiff expressed concern over the effect that the computer would have upon his future ownership in equal shares in Central Nebraska Medical Clinic, P.C. which defendants promised as an inducement to employment; and plaintiff told defendants that a continuing lease of the computer system to the professional corporation, without termination date, was unacceptable to him.

19. That in response, Dr. Jacobsen assured the plaintiff that when he had recovered his investment, his lease would terminate, and he would either reduce the rent to a normal rent for a system of that kind and value at the time, or would sell the system to the professional corporation at the fair market value at the time of sale.

20. That the plaintiff reasonably relied upon the representations and promises of Dr. Jacobsen to his detriment, and accepted employment with the defendants.

In granting Jacobsen and the Clinic's motion for summary judgment, the district court concluded that the evidence adduced established that there was no meeting of the minds concerning the alleged oral agreement. Absent a meeting of the minds, there could be no contract and, therefore, nothing to breach. Given the standard of review, the issue we must address is whether the evidence, when viewed in a light most favorable to Schlake, the party against whom judgment was granted, established a genuine issue of material fact to prevent entry of judgment as a matter of law.

There was very little evidence presented regarding the terms of the oral agreement. Schlake discussed the terms of the oral agreement in his deposition. The deposition contains the following:

[Counsel for appellees:] What was your position in

regard to the computer at that point?

[Schlake:] My position was that he should be held to the original proposal which he gave me in 1984.

Q That was what?

A He discussed the computer with me on my initial visit here. I think the visit was in September as best I can recall. I came up and Jake [Jacobsen] had driven me around town. We ended up at his house. He was discussing the practice. We discussed my salary.

. . . .

He assured me at that point that they intended to recoup their investment, take the tax credit, and then some adjustment would be made with the computer, either to sell it to the corporation or to some way reduce the charge to eliminate it as an outside business interest. That was specifically discussed in his house on his couch in September of '84.

During a deposition, Jacobsen also testified as follows about the oral agreement:

[Counsel for appellant:] Do you recall telling Dr. Schlake that when you had purchased the equipment, the computer equipment, that you would continue with the lease until you had recovered your investment? Do you recall that?

[Jacobsen:] Yes, that was discussed.

Q Is that what you told him?

A Not totally.

Q What did you totally tell him?

A You are using partial.

Q That is why I'm asking. What did you tell him concerning that?

A I told him that the computer system had been purchased, the things I have just talked to you about, and that at such time as whenever it got paid for, if then he wanted a portion of that, that could be discussed and we could negotiate. That is what was discussed at that time.

. . . .

Q You told him that during that first set of interviews before he became an employee?

A That's correct.

Viewing this evidence in the light most favorable to Schlake, we conclude that the trial court erred in determining that there was no meeting of the minds. Clearly, Jacobsen agreed to negotiate the computer billing system with Schlake once Jacobsen recouped his investment. To that extent, there was a meeting of the minds. However, a mere agreement to later negotiate cannot constitute a contract. An agreement to make a future contract is not binding unless all terms are agreed upon and nothing is left for future negotiation. *Sayer v. Bowley*, 243 Neb. 801, 503 N.W.2d 166 (1993); *Viking Broadcast Corp. v. Snell Publishing Co.*, 243 Neb. 92, 497 N.W.2d 383 (1993). A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement. *Hawkins Constr. Co. v. Reiman Corp.*, 245 Neb. 131, 511 N.W.2d 113 (1994); *Logan Ranch v. Farm Credit Bank*, 238 Neb. 814, 472 N.W.2d 704 (1991).

In the case at hand, Schlake's deposition testimony conclusively establishes that essential terms of the future contract were not decided. Schlake repeatedly testified that the oral agreement was not reduced to writing or incorporated into an employment agreement because the parties could not agree on the terms. He testified:

[Counsel for appellees:] Verbal contract. What were the terms of the verbal contract in regard to the P.C. System, computer system?

[Schlake:] We came to terms on the other contract. Basically, I said what is Jake taking? He was taking retirement, health insurance, and then a basic wage, expense account, and then production. I said whatever that is — what's good for the goose is good for the gander. We split it that way.

We discussed the computer, and Jake said the computer contract is what the computer contract is and offered no other at that point in time.

Q He did not indicate any willingness at that point to change the situation that was ongoing?

A It [had] already become a sticky point by the end of

one year, yes.

Q All right.

A It was the main reason that no written contract was signed because he would not offer one with any agreement regarding the P.C. Billing in it, so I would not sign any contract.

Q Is it a fair statement that there was no meeting of the minds in regard to —

A There was no meeting of the minds in regard to the computer, but it was already to the point it was causing a great deal of friction at the end of one year.

Q That takes us then to March of 1989. There came a time in March of '89 that you signed another written agreement.

A Yes, I did.

Q Was the computer system part of that written agreement?

A No, sir.

Q Why not?

A. Again, there was no meeting of the minds. It was still a point of friction. We had several discussions of how to settle it. Jake again assured me that it would be settled.

I believe it was at that time that we discussed purchasing another computer to replace it, and then make that part of the corporation so that it would no longer be a sticking point. Nothing ever came about from that, even though assurances were made that it would be settled.

In light of the foregoing, the granting of summary judgment on the second cause of action was appropriate, although for different reasons than those offered by the trial court. See *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 243 Neb. 351, 500 N.W.2d 520 (1993) (when the record indicates the decision of the trial court is correct, although for reasons different from those relied upon below, an appellate court will affirm the trial court's decision). See, also, *Douglas Cty. Bank & Trust v. Stamper*, 244 Neb. 226, 505 N.W.2d 693 (1993).

## Fourth Cause of Action

With respect to the fourth cause of action, entitled

"Equitable Action to Construe and Reform Billing Contract," Schlake asserts that the trial court erred in granting summary judgment in favor of Jacobsen and the Clinic. He further contends that he should have been granted summary judgment.

As a general rule, reformation of written instruments may be had by the immediate parties thereto and by those standing in privity with them. A person not a party or privy to the transaction in question with a substantial interest therein may not maintain the action. *National Am. Ins. Co. v. Continental Western Ins. Co.*, 243 Neb. 766, 502 N.W.2d 817 (1993).

The parties to the contract were Jacobsen and the Clinic. Schlake was not a party to the billing contract; neither was he in privity with either of the parties. Schlake does not have standing to seek a reformation of the contract. The district court's grant of summary judgment was appropriate. Hence, this assignment of error is meritless.

## LATE ANSWER

Schlake also assigns as error the district court's overruling of his objection to Jacobsen and the Clinic's late answer. The parties do not dispute that the answer was filed late. At issue is whether the trial court properly overruled Schlake's objection.

A party in default may be permitted to answer upon such terms as to the payment of costs as may be prescribed by the court, at any time before judgment is rendered. *Anest v. Chester B. Brown Co.*, 169 Neb. 330, 99 N.W.2d 615 (1959). And where it is apparent that the party in default has a meritorious defense to the action, the trial court must permit the answer to be filed. The court cannot deprive a suitor of a substantial right under the plea of an exercise of discretion. *Id.* Such matters rest largely within the discretion of the trial court, and an abuse of discretion must affirmatively appear to justify a reversal on such a ground. *Id.*

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *State v. Fahlk, ante* p.

834, 524 N.W.2d 39 (1994). The trial court did not abuse its discretion in allowing the late answer.

## PREJUDGMENT INTEREST

In his last assignment of error, Schlake asserts that the trial court erred in refusing to award Schlake prejudgment interest. Schlake submits that since Jacobsen admitted that $50,000 was the minimum redemption amount due, he was entitled to prejudgment interest on that portion of his $75,000 award. Schlake's claim is meritless. We have held that a litigant must comply with Neb. Rev. Stat. § 45-103.02 (Reissue 1993) in order to receive prejudgment interest in actions accruing after January 1, 1987. *Sayer v. Bowley*, 243 Neb. 801, 503 N.W.2d 166 (1993). Section 45-103.02 provides:

> Except as provided in section 45-103.04, judgment interest shall also accrue on decrees and judgments for the payment of money from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the rendition of judgment if all of the following conditions are met:
>
> (1) The offer is made in writing upon the defendant by certified mail, return receipt requested, to allow judgment to be taken in accordance with the terms and conditions stated in the offer;
>
> (2) The offer is made not less than ten days prior to the commencement of the trial;
>
> (3) A copy of the offer and proof of delivery to the defendant in the form of a receipt signed by the party or his or her attorney is filed with the clerk of the court in which the action is pending; and
>
> (4) The offer is not accepted prior to trial or within thirty days of the date of the offer, whichever occurs first.

These causes of action accrued after January 1, 1987. Therefore, prejudgment interest cannot be awarded to a litigant who has failed to meet the requirements of § 45-103.02. There being no evidence that § 45-103.02 was complied with, Schlake is not entitled to prejudgment interest. The district court properly denied Schlake's request for prejudgment interest.

## CROSS-APPEAL

On cross-appeal, Jacobsen and the Clinic claim that the district court erred when it refused to accept the jury's verdict for them, sending the jury back to deliberate. In support of their argument, Jacobsen and the Clinic rely on *Volker v. First Nat'l Bank*, 26 Neb. 602, 42 N.W. 732 (1889). In *Volker*, the plaintiff brought an action against the defendant to recover usurious interest. The jury returned a verdict for the plaintiff and awarded $16.60. However, the defendant had admitted that it had taken $21.50 in illegal interest from the plaintiff. The trial court overruled the plaintiff's motion for new trial, but rendered judgment for the plaintiff in the amount of $50. When the trial court's action was challenged on appeal this court stated:

> When the only available error is in the computation of damages, the court *may, if the proof is undisputed on that point, or the facts are admitted*, render a judgment, with the defendant's consent, according to such proof or admitted facts, notwithstanding a verdict for a lower sum, instead of granting a new trial upon that ground alone.

(Emphasis supplied.) *Id.* at 606, 42 N.W.2d at 733.

*Volker* is distinguishable, and the rule contained therein is inapplicable here. The rule is not obligatory. We said a court "may" render a judgment if certain conditions have been met. Further, the conditions under which the rule is applicable have not been met. The amount of damages for breach of the redemption agreement was disputed, although Jacobsen and the Clinic admitted that Schlake was owed at least $50,000.

Schlake maintains that the applicable rule is contained in *Bushey v. French*, 171 Neb. 809, 108 N.W.2d 237 (1961). There, the jury returned with a verdict for the plaintiff, but awarded " '$ No Money.' " *Id.* at 810, 108 N.W.2d at 238. The trial court accepted the verdict. On appeal, this court determined that the trial court's acceptance of such a verdict was erroneous. *Bushey, supra.* Concluding that a jury assessment of " '$ No Money' " is no verdict at all, this court determined that the proper course would have been to return the case to the jury with directions to follow the instructions. In *Bushey*, the initial verdict was for the plaintiff. The case at hand differs. Here, the jury initially

returned a verdict for the defendants, Jacobsen and the Clinic. Despite this slight difference, we believe the court acted properly in sending the case back to the jury. Jacobsen and the Clinic's admission that at least $50,000 was owed under the terms of the redemption agreement required a verdict for Schlake. Given that the exact amount was in dispute, a factual issue remained. Rather than interpreting a jury's verdict to mean that it considered the amount of damages to be no greater than that admitted by the defendants, the better course is to resubmit the issue before the jury is discharged. The district court followed the correct course of action.

## CONCLUSION

In light of the foregoing, the judgment of the district court is affirmed.

AFFIRMED.