LEWIS R. CIMINO ET AL., APPELLANTS, V. FIRSTIER BANK,
N.A., ET AL., APPELLEES.
530 N.W.2d 606

Filed April 14, 1995.    No. S–93–493.

Michael C. Cox and Terrance S. DeWald, of Koley, Jessen, Daubman & Rupiper, P.C., for appellants.

Thomas E. Johnson and Steven C. Turner, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellees.

WHITE, C.J., FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CONNOLLY, J.

Lewis R. Cimino, individually, and Richard D. Cimino and Robert M. Cimino (collectively, the Ciminos), individually and as trustees of the Cimino Family Estate Trust (Family Trust), brought this action against the defendants, FirsTier Bank, N.A., FirsTier Leasing Corp., and FirsTier Bank, N.A., Omaha (collectively, FirsTier). The Ciminos appeal the decision by the district court for Douglas County wherein the district court sustained FirsTier's motion to strike certain factual allegations and three theories of recovery from the Ciminos' second amended petition, as well as the district court's decision to sustain FirsTier's motion for summary judgment on the Ciminos' third amended petition. The Ciminos also complain that the district court erred in overruling the Ciminos' motion for leave to file a fourth amended petition. We affirm the judgment of the district court for the reasons stated below.

# I. FACTUAL BACKGROUND

## 1. PROCEDURAL HISTORY

The Ciminos filed their second amended petition in the district court on April 23, 1991. Based on the factual background detailed herein, the Ciminos alleged five theories of recovery: breach of an oral contract, breach of the obligation of good faith and fair dealing, breach of fiduciary duty, intentional interference with contractual relationship, and misrepresentation. The first two theories of recovery sounded in contract, while the last three sounded in tort. FirsTier filed a motion to strike paragraphs 18 and 26, as well as counts III (breach of fiduciary duty), IV (intentional interference with contractual relationship), and V (misrepresentation) from the second amended petition. The district court sustained FirsTier's motion to strike.

Later, the Ciminos filed a motion for new trial, reconsideration, and clarification of the district court's ruling on the motion to strike. The district court denied that motion. The Ciminos then filed their third amended petition, which reflected the changes necessitated by the order to strike.

FirsTier filed a motion for summary judgment on the third amended petition. Almost 5 months later, on March 3, 1993, the day of the hearing on the summary judgment motion, the Ciminos filed a motion for leave to file a fourth amended petition. On May 13, the district court sustained FirsTier's motion for summary judgment on the Ciminos' third amended petition, holding that the evidence, viewed in a light most favorable to the Ciminos, failed as a matter of law to establish the requisite meeting of the minds necessary for the creation of the alleged December 10, 1987, oral contract. The district court held that the deposition testimony of the participants in the December 10 meeting indicated that no one shared the same understanding of the terms of the loan guaranty and that each participant, as reflected by the written documentation prepared after the December 10 meeting, expected further negotiations before the deal could be closed.

On May 20, 1993, the district court denied the Ciminos' motion for leave to file a fourth amended petition. This appeal followed.

## 2. THE PARTIES

Plaintiff Lewis Cimino became involved in the trucking business in the mid-1960's. In 1967, Lewis purchased and began operating a long–haul over–the–road refrigerated trucking business known as Silvey Refrigerated Carriers (Silvey). The Family Trust owned all the common stock in Silvey, and Lewis owned all the preferred stock. Lewis formed several subsidiary companies for the purposes of buying and selling other Cimino business ventures, leasing equipment to Silvey, and owning real estate for Silvey.

Lewis financed the purchase of Silvey with a loan from the Omaha National Bank, now known as FirsTier. During the 1980's, the relationship between Silvey and FirsTier expanded to include leased equipment, equipment purchased with industrial development authority bonds (IDA bonds), a revolving line of credit, and letters of credit for fuel and service work required for the trucking operation. At the time the instant proceedings were filed, Silvey and the related companies had outstanding debt to FirsTier totaling approximately $8.9 million.

Richard and Robert Cimino, Lewis' sons, are both attorneys. In the late 1970's or early 1980's, Richard and Robert began working for Silvey. Sometime during the mid–1980's, Lewis decided to diminish his role in Silvey's administration, leaving the company in Richard and Robert's hands.

Thomas Grojean, the owner of a number of other trucking businesses, formed a holding company in 1987 for the purpose of acquiring Silvey. John Muehlstein and Rich Traub, attorneys from the Chicago law firm of Pedersen & Haupt, represented Grojean in his attempt to acquire Silvey. Richard Cimino negotiated with Grojean on behalf of Silvey and the other Cimino companies, and retained an Omaha law firm to assist in preparing documentation and to render any necessary legal opinions.

## 3. THE TRANSACTION

In June 1987, Richard and Robert decided to seek a buyer for Silvey and the related companies. The Ciminos retained a broker, which prepared a brochure about the business and

distributed it to several potential purchasers.

## (a) The Negotiations

One of the potential buyers who contacted the Ciminos about purchasing Silvey and the related companies was Grojean. Robert considered Grojean's offer very attractive because Grojean proposed to purchase the entire company, including the stock and liabilities, and because Grojean offered substantially more money than other potential buyers. The Ciminos entered into negotiations with Grojean and executed a stock purchase and redemption agreement (Purchase Agreement) on November 30, 1987. Following execution of the Purchase Agreement, the only significant issue to be resolved prior to closing was obtaining FirsTier's consent to the sale.

Though FirsTier did not actively participate in negotiating the Purchase Agreement, the Ciminos kept the bank apprised of the situation with Grojean. All parties were aware that FirsTier would have to approve the terms of the sale to Grojean because the transaction involved the sale of stock and required that FirsTier relinquish its security interest in several million dollars of Silvey's accounts receivable and other assets. The accounts receivable and other assets were to be pledged to American National Bank, the financier behind Grojean's proposed purchase of Silvey, because American National demanded a first priority security interest in the assets collateralizing its loan to Grojean.

## (b) The October 16, 1987, Meeting

On October 16, 1987, Richard called a meeting at FirsTier's offices between himself, Grojean, and FirsTier representative Lawrence Uebner, as well as other FirsTier representatives, to introduce the FirsTier representatives to Grojean and to enable the FirsTier representatives to become familiar with the ongoing negotiations between the Ciminos and Grojean. During the meeting, Grojean outlined the preliminary terms of the proposed transaction and presented his financial projections for the companies following the sale. As part of the proposed transaction, Grojean's bank, American National, offered to pay off Silvey's existing revolving line of credit and letters of credit at FirsTier (totaling approximately $1.8 million). In return,

American National proposed that FirsTier release its security interest in Silvey's accounts receivable and equipment, which served as collateral for the revolving line and letters of credit. Under Grojean's proposal, FirsTier would retain the approximately $7.1 million in debt represented by the IDA bonds, equipment leases, and other assorted debt. FirsTier requested that Grojean personally guarantee the debt which was to remain at FirsTier. At the October 16 meeting, Grojean stated that he would not personally guarantee that debt.

### (c) The December 10, 1987, Meeting

The parties continued to negotiate Grojean's personal guaranty of the remaining debt. At the Ciminos' request, on December 10, 1987, FirsTier representatives Uebner, John Nahas, and Lee Mayhan met with Grojean and Lewis and Richard Cimino at FirsTier's offices. The Ciminos alleged in their third amended petition that FirsTier entered into an oral agreement with the Ciminos at the December 10 meeting, whereby FirsTier agreed to consent to the sale of Silvey to Grojean in return for a "tiered" guaranty from Lewis and a "conditional" guaranty from Grojean. Specifically, the Ciminos contend that FirsTier agreed that Lewis would guarantee the first 40 percent of the approximately $7.1 million in debt remaining with FirsTier, Grojean would guarantee the next 36 percent, and Lewis would be liable for the remaining 24 percent.

The Ciminos allege that at the same meeting, FirsTier reached a *separate* agreement with Grojean, whereby FirsTier agreed to retain the $7.1 million debt for Grojean's conditional guaranty discussed above. At the conclusion of the meeting, the FirsTier representatives suggested that the agreement be reduced to writing using the bank's forms. However, Grojean insisted that his attorneys furnish the written version of the guaranty. The FirsTier representatives agreed to allow Grojean's attorneys to draft the document, stating that they would take a look at it and see if it was acceptable.

### (d) The Documentation

The following day, December 11, 1987, Uebner prepared two internal bank documents, a "Watch List Loan Memo" and a

"Problem Loan Update" (collectively, internal documents) setting forth the terms of the alleged December 10 agreement. The terms set forth in the internal documents appear consistent with the agreement which the Ciminos contend the parties reached on December 10.

The record reflects that, pursuant to FirsTier's procedures, the FirsTier general banking loan committee and senior loan committee approved the transaction detailed in the Watch List Loan Memo. Following committee approval, Uebner drafted a letter to Jim Morgan at American National detailing American National's payoff to FirsTier on Silvey's revolving line and letters of credit, and the release of the accounts receivable collateral. Uebner indicated that he would be at the closing.

On December 16, 1987, Grojean's attorney Muehlstein forwarded an "initial draft" (the Muehlstein draft) of the alleged December 10 guaranty agreement between FirsTier and Grojean to Mayhan at FirsTier. The Muehlstein draft differed from the FirsTier internal documents in that it required FirsTier to *collect* the first 40 percent of the outstanding debt before FirsTier could look to Grojean to fulfill his conditional personal guaranty.

The following day, December 17, 1987, Mayhan rejected the Muehlstein draft and faxed a revised version of agreement (the Mayhan revision) to Muehlstein. The Mayhan revision significantly changed the above–cited language in the Muehlstein draft by eliminating the requirement that FirsTier collect 40 percent of the outstanding debt from Lewis before it could proceed against Grojean. The Mayhan revision kept intact the 36–percent limitation on Grojean's liability, but it would have allowed FirsTier to proceed immediately against Grojean to collect the 36 percent. Grojean objected and told FirsTier that it had changed the terms of their agreement and that he could not proceed with the transaction under the terms proposed in the Mayhan revision. A representative from FirsTier informed Grojean that the Mayhan revision was the only agreement acceptable to the bank. Grojean never agreed to the terms in the Mayhan revision, so FirsTier never gave its consent to the sale.

## II. ASSIGNMENTS OF ERROR
The Ciminos contend that the district court erred in (1)

sustaining FirsTier's motion to strike paragraphs 18 and 26 and counts III, IV, and V from their second amended petition; (2) overruling the Ciminos' motion for new trial, reconsideration, and clarification; (3) granting summary judgment on the Ciminos' third amended petition; and (4) overruling the Ciminos' motion for leave to file a fourth amended petition.

## III. STANDARD OF REVIEW

For the purposes of determining the relevancy and materiality of allegations in a pleading, a motion to strike admits the truth of all facts well pleaded and any inferences fairly deducible therefrom. *State ex rel. Beck v. Associates Discount Corp.*, 162 Neb. 683, 77 N.W.2d 215 (1956).

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Jim's, Inc. v. Willman, ante* p. 430, 527 N.W.2d 626 (1995); *Gravel v. Schmidt, ante* p. 404, 527 N.W.2d 199 (1995); *Heath Consultants v. Precision Instruments, ante* p. 267, 527 N.W.2d 596 (1995). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Jim's, Inc. v. Willman, supra*; *Gravel v. Schmidt, supra*; *Huntwork v. Voss, ante* p. 184, 525 N.W.2d 632 (1995).

## IV. ANALYSIS

### 1. MOTION TO STRIKE

The Ciminos contend that the district court erroneously sustained FirsTier's motion to strike the three tort claims in their second amended petition, as well as two factual paragraphs that supported the tort claims. In sustaining the motion to strike, the district court found that the three tort claims merely restated the breach of contract claims and did not constitute separate causes of action.

To determine whether an action is based on a contract or a

tort, a court must examine and construe the petition's essential and factual allegations by which the plaintiff requests relief, rather than the legal terminology utilized in the petition or the form of the pleading. *J.L. Healy Constr. Co. v. State*, 236 Neb. 759, 463 N.W.2d 813 (1990); *L. J. Vontz Constr. Co. v. State*, 230 Neb. 377, 432 N.W.2d 7 (1988). Consideration must be given to the facts which constitute the cause of action. *Thomas v. Countryside of Hastings*, 246 Neb. 907, 524 N.W.2d 311 (1994); *L. J. Vontz Constr. Co. v. State, supra*; *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984). If the petition contains a cause of action for breach of contract, additional averments appropriate to a cause of action for a wrong will not change the action from contract to tort, and if there is a doubt as to the character of the action, it will be resolved in favor of an action on contract. *Fuchs v. Parsons Constr. Co.*, 166 Neb. 188, 88 N.W.2d 648 (1958). In such an instance, the statements appropriate to an action in tort will be considered surplusage. *Id.*

We hold that even if the Ciminos stated facts sufficient to establish that FirsTier owed them a fiduciary duty, intentionally interfered with the Ciminos' contractual relations, and made material misrepresentations, the Ciminos failed to plead those theories as independent tort actions. Each of the allegations contained in the Ciminos' tort claims relates directly to FirsTier's refusal to consent to the sale of Silvey to Grojean. That same refusal forms the basis of the Ciminos' breach of contract claims. The Ciminos failed to allege any separate and distinct factual occurrences that could stand alone as a separate cause of action sounding in tort. Therefore, we affirm the trial court's order to strike counts III, IV, and V, as well as paragraphs 18 and 26, from the Ciminos' second amended petition. See *Fuchs v. Parsons Constr. Co., supra.*

Since we have held that the district court properly sustained FirsTier's motion to strike counts III, IV, and V, as well as paragraphs 18 and 26 of the Ciminos' second amended petition, we likewise affirm the district court's decision overruling the Ciminos' motion for new trial, reconsideration, and clarification.

## 2. MOTION FOR SUMMARY JUDGMENT

### (a) Oral Contract Claim

The Ciminos allege that the district court erred in granting FirsTier's motion for summary judgment on the Ciminos' third amended petition. As described previously, the district court found that the Ciminos failed as a matter of law to establish a meeting of the minds necessary for the creation of the alleged December 10 oral contract. The district court held that the deposition testimony of the participants in the December 10 meeting indicated that no one had the same understanding of the terms of the loan guaranty and that each participant, as reflected by the written documentation prepared after the December 10 meeting, expected further negotiations before the deal could be closed.

The Ciminos argue that the parties reached two separate agreements on December 10: FirsTier orally contracted with the Ciminos to retain $7.1 million in debt in return for Grojean's conditional personal guaranty, and FirsTier orally contracted with Grojean as to the terms of that personal guaranty:

> As alleged in the Third Amended Petition, FirsTier orally agreed with Cimino to consent to the sale in return for a guaranty from Grojean "on the terms set forth in [the Muehlstein draft]" attached thereto. The *written* guaranty agreement contemplated between FirsTier and Grojean is not the *oral* agreement between FirsTier and Cimino. Instead, it is merely evidence of some of the "terms" of the Cimino oral agreement, much like the December 11, 1987 FirsTier [internal documents] . . . .
>
> FirsTier's repeated reference to the fact Grojean and FirsTier intended to finalize *their* guaranty agreement in writing is irrelevant to whether an *oral* contract was made between FirsTier and Cimino at the December 10 meeting.

(Emphasis in original.) Reply brief for appellants at 2–3. The Ciminos contend that we should not be misled by FirsTier's arguments regarding the confusion surrounding the FirsTier–Grojean guaranty, because that agreement was separate and distinct from the FirsTier–Cimino oral contract, which the Ciminos seek to enforce.

We find no merit in the Ciminos' argument that the FirsTier–Grojean agreement was separate from and unrelated to the FirsTier–Cimino agreement. Rather, the FirsTier–Grojean agreement was a condition precedent to the FirsTier–Cimino agreement. A condition precedent is a condition which must be performed before the parties' agreement becomes a binding contract or a condition which must be fulfilled before a duty to perform an existing contract arises. *Donaldson v. Farm Bureau Life Ins. Co.*, 232 Neb. 140, 440 N.W.2d 187 (1989); *Schmidt v. J. C. Robinson Seed Co.*, 220 Neb. 344, 370 N.W.2d 103 (1985). Clearly, before the Ciminos could enforce a contract wherein FirsTier agreed to consent to the sale of Silvey to Grojean based on a tiered personal guaranty from Grojean, FirsTier and Grojean had to agree on the terms and structure of the tiered agreement. Therefore, in order for the Ciminos to successfully enforce their alleged oral contract with FirsTier, they also had to prove that FirsTier and Grojean entered into an enforceable agreement, thus satisfying the condition precedent to the FirsTier–Cimino alleged oral contract.

To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Lindsay Ins. Agency v. Mead*, 244 Neb. 645, 508 N.W.2d 820 (1993). For a binding contract to result from an offer and acceptance, the minds of the parties must meet at every point; nothing can be left open for future arrangement. *Sayer v. Bowley*, 243 Neb. 801, 503 N.W.2d 166 (1993).

The record reflects that the parties in the instant case did reach at least a tentative guaranty agreement at the December 10 meeting regarding the percentages of personal liability to be assigned to Lewis and Grojean. Each participant at the December 10 meeting testified that Lewis agreed to be liable for 40 percent of the outstanding debt, that Grojean agreed to be responsible for the next 36 percent, and that Lewis would assume responsibility for any remaining debt. On December 11, FirsTier prepared its internal documents, which reflected essentially the same terms. The Ciminos contend that the internal documents evidenced FirsTier's belief that the parties had reached a contractual agreement.

Viewing the evidence in a light most favorable to the Ciminos, we determine that the record supports a finding that there was a meeting of the minds among the parties that Grojean would personally guarantee the debt remaining with FirsTier in a tiered agreement. Likewise, the record supports the inference that the parties may have agreed upon the percentage of tiered liability to be assigned to Lewis and Grojean. However, the record clearly indicates that certain material aspects of the alleged oral agreement were left unresolved, thus preventing legal enforcement of the agreement.

### (i) Meeting of the Minds Regarding Triggering Event

FirsTier contends that the Ciminos' oral contract argument is unsupported by the record because the deposition testimony and exhibits clearly demonstrated that further negotiations were necessary before the parties could agree to certain material terms of the contract, particularly the events that would trigger Grojean's liability. Uebner testified that he understood the December 10 agreement to mean that FirsTier could proceed immediately against Grojean for his full 36 percent liability without waiting to liquidate the existing collateral. Nahas testified that no agreement had been reached regarding liability triggers under the tiered agreement. In contrast, the record reflects that Grojean and Richard and Lewis Cimino all testified that Grojean's personal guaranty would become effective when Silvey's outstanding debt was reduced by 40 percent, whether the reduction be by forgiveness or collection of Lewis' personal guaranty of that first 40 percent. However, the Ciminos cited the Muehlstein draft as the document memorializing the December 10 oral agreement.

### (ii) The Muehlstein Draft

FirsTier contends that the deposition testimony of the Ciminos and Grojean provides conclusive evidence that the parties did not agree on the terms contained in the Muehlstein draft. Therefore, FirsTier argues that no meeting of the minds took place at the December 10 meeting.

In their third amended petition, the Ciminos alleged that the "terms of [the December 10 oral] agreement are set forth in [the Muehlstein draft] attached hereto and incorporated herein by

reference." The record clearly reflects that the Muehlstein draft added a previously nonexistent component to the alleged December 10 agreement by requiring that FirsTier *collect* 40 percent of the outstanding debt from Lewis before it could proceed against Grojean. Therefore, the Muehlstein draft is inconsistent with what the Ciminos claim the parties agreed upon at the December 10 meeting.

The third amended petition, read in a light most favorable to the Ciminos, clearly states that the terms of the December 10 oral agreement were embodied in the Muehlstein draft. Since the Muehlstein draft on its face contradicts the oral contract described by the Ciminos and Grojean, as well as the testimony of Uebner and Nahas, we hold as a matter of law that there could not have been a meeting of the minds as to all the material terms of the agreement at the December 10 meeting. Thus, we affirm the district court's decision to sustain FirsTier's motion for summary judgment.

### (iii) Intent for Further Negotiations

FirsTier also argues that no enforceable contract could have been formed at the December 10 meeting because the parties agreed that further negotiations were necessary to close the deal. An agreement to make a future contract is not binding upon either party unless all terms and conditions are agreed upon and nothing is left to future negotiation. *Schlake v. Jacobsen*, 246 Neb. 921, 524 N.W.2d 316 (1994); *Sayer v. Bowley*, 243 Neb. 801, 503 N.W.2d 166 (1993). A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement. *Schlake v. Jacobsen, supra*. An agreement to agree, rather than a complete contract that could simply be memorialized at a later time, is not enforceable in Nebraska. See *Sayer v. Bowley, supra*.

FirsTier cites Richard's and Lewis' deposition testimony as evidence that the participants in the December 10 meeting intended to engage in further negotiations before reaching a final agreement. Richard testified as follows:

Q. . . . Mr. Grojean's response to that was what, sir?

A. He says that might work, I want to review it with my

lawyers, and it's, you know, it's some — you know, I've talked with Mr. Perry. Now he was talking to Greg Perry at his firm, who was a senior partner at the Pedersen & Houpt [sic] firm in Chicago.

And he said that might work, but I want to review it one more time with my attorneys and I'll call you, I'll be in Chicago tomorrow.

Similarly, Lewis offered this version of the conclusion of the December 10 meeting:

Q. Okay. Now going back to the meeting where you claim this agreement was reached, Nahas said — as I understand it, Nahas said to Grojean that he would look to Lou [sic] for the first 40 percent of the loss. Remember that conversation?

A. Roughly.

Q. What was Grojean's response after Nahas made this statement?

A. Well, he — I think he wanted to think about it, and he wanted to talk to his attorneys on how to structure it and agree to it. And he said — in the final analysis, he says okay, we got a deal.

Q. But he wanted to talk to his attorneys about how to structure it?

A. Yeah. Well, he talked to his attorneys on — and he has a financial advisor back there, too, that — he talks to them on dotting all the I's and crossing all the Ts.

From Richard's and Lewis' testimony, it is clear that they were under the impression that the parties had more work to do before FirsTier and Grojean could reach a final agreement. Construing all the evidence in the Ciminos' favor, it is impossible to envision how an enforceable agreement could have been created at the December 10 meeting without further negotiations. Therefore, the district court correctly determined that the parties did not form an enforceable oral contract at the December 10 meeting. See, *Schlake v. Jacobsen, supra*; *Sayer v. Bowley, supra*.

(b) Bad Faith Refusal to Consent to Transaction

The Ciminos' second theory of recovery in their third

amended petition alleged that FirsTier breached its implied covenant of good faith and fair dealing in its relationship with the Ciminos by unreasonably withholding its consent to the sale of Silvey to Grojean. The district court granted FirsTier's motion for summary judgment as to this claim because it found that the evidence did not support an argument that FirsTier, the Ciminos, and Grojean were legally bound to any agreement. In other words, the district court found that FirsTier could not have breached its duty of good faith because there was no contract upon which to impose liability.

The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract. See *Dunfee v. Baskin-Robbins, Inc.*, 221 Mont. 447, 720 P.2d 1148 (1986). However, in order for the implied covenant of good faith and fair dealing to apply, there must be in existence a legally enforceable contractual agreement. In the case at bar, we have held that the Ciminos failed to prove the existence of an enforceable oral contract. Therefore, as a matter of law, we hold that the district court properly sustained FirsTier's motion for summary judgment as to the Ciminos' implied covenant claim.

### 3. Motion for Leave to File Fourth Amended Petition

Just prior to the scheduled hearing on FirsTier's motion for summary judgment, the Ciminos filed a motion for leave to file a fourth amended petition. In the proposed fourth amended petition, the Ciminos deleted the language in the third amended petition which cited the Muehlstein draft as the document containing the terms of the alleged December 10 agreement. The Ciminos replaced that language with a general outline of the terms of the alleged December 10 oral agreement, which reflected the deposition testimony of Grojean and Richard and Lewis Cimino. In accordance with our analysis above, that amendment altered the Ciminos' petition in such a manner as to create a factual dispute regarding whether the participants in the December 10 meeting did in fact execute an oral contract. The district court, however, overruled the Ciminos' motion for leave to file the fourth amended petition.

The decision whether to allow or deny an amendment to any pleading lies within the discretion of the court to which application is made. *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Pendleton v. Pendleton, ante* p. 66, 525 N.W.2d 22 (1994); *Grady v. Visiting Nurse Assn.*, 246 Neb. 1013, 524 N.W.2d 559 (1994); *Schlake v. Jacobsen*, 246 Neb. 921, 524 N.W.2d 316 (1994).

FirsTier argues that even if the fourth amended petition would have survived its motion for summary judgment, the trial court did not abuse its discretion in denying the Ciminos' motion for leave because the proposed amendment substantially changed the nature of the Ciminos' claim. The Ciminos contend that the proposed amendment merely conformed the petition to the then-known evidence.

The Ciminos filed the original petition in the case at bar February 23, 1990. That petition, and the three amended petitions that followed, all stated that the terms of the alleged December 10 oral agreement were set forth in the Muehlstein draft. The deposition testimony supporting the proposed amendment had all been taken by March 1991. FirsTier filed its motion for summary judgment October 9, 1992. Throughout the litigation, both parties had proceeded under the premise that the Muehlstein draft reflected the terms of the alleged December 10 agreement. On March 3, 1993, 5 months after FirsTier filed its motion for summary judgment and over 3 years and three amended petitions after the instant case was originally filed, the Ciminos proposed a fourth amended petition which substantially changed the nature of the Ciminos' breach of contract claim.

In the past, this court has stated that the time at which an amendment occurs is not dispositive of whether a party was prejudiced. See, *Collection Associates, Inc. v. Eckel*, 212 Neb. 607, 324 N.W.2d 808 (1982); *Lippire v. Eckel*, 178 Neb. 643, 134 N.W.2d 802 (1965). However, in the instant case, the

amendment proposed by the Ciminos significantly altered the basis of their breach of oral contract claim. That fact, combined with the circumstances outlined above, convinces us that the district court did not err in refusing to grant the Ciminos' motion for leave to file a fourth amended petition. See *Collection Associates, Inc. v. Eckel, supra.*

## V. CONCLUSION

The district court properly sustained FirsTier's motion to strike the Ciminos' tort claims and the factual assertions supporting those claims in the Ciminos' second amended petition because the Ciminos failed to plead a separate and distinct set of facts distinguishing the tort claims from the Ciminos' properly pled contract claims. The district court also correctly sustained FirsTier's motion for summary judgment because the pleadings and evidence, read in a light most favorable to the Ciminos, failed to present an issue of material fact sufficient to prevent judgment as a matter of law for FirsTier. The district court did not err in denying the Ciminos leave to file a fourth amended petition, because the proposed amendment would have prejudiced FirsTier under the circumstances presented in the instant case.

AFFIRMED.

CAPORALE, J., not participating.