# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 99-3593

_____

Oriental Trading Co., Inc., a Nebraska    *
Corporation,                                *
                                       *

        Plaintiff-Appellee,      *
                                         *

                                         *    Appeal from the United States
       v.                            *    District Court for the District
                                         *    of Nebraska.
                                         *

Sam G. Firetti; Bing Ran,           *
                                         *

        Defendants-Appellants.    *

_____

Submitted: October 19, 2000
Filed:   January 10, 2001

_____

Before WOLLMAN, Chief Judge, and MURPHY and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

       This tort action was brought by Oriental Trading Co., Inc. (OTC) against Sam
Firetti and Bing Ran for fraud, negligent misrepresentation, and conversion. After
judgment was entered on a jury verdict in favor of OTC, Firetti and Ran each filed a

motion for judgment as a matter of law or for a new trial. The district court[1] denied the motions, and Firetti and Ran appeal. We affirm.

I.

Sam Firetti and Bing Ran are residents of Virginia who were directors, officers, and shareholders of Global Marketing Group, Inc. (Global), a Virginia corporation that sold pencils and crayons. In September 1993, Firetti approached OTC at a trade show to develop a business relationship for Global. OTC is a Nebraska corporation that sells goods made in Asia through its catalogs. After the show, Firetti sent a letter to OTC listing prices for pencils and crayons. Chris Weber, a buyer for OTC, contacted Firetti in response and received a price quote. On January 31, 1994 and March 31, 1994, OTC and Global entered into two written form contracts in which OTC agreed to buy from Global a specific number of pencils and crayons at an established price. The goods were to be made in China and delivered to OTC in Nebraska. The contracts had identical terms except for the type and quantity of pencils and crayons to be shipped; they provided that Global would sell the goods "F.O.B. Hong Kong" and OTC could provide a letter of credit. United States Customs Service (Customs) duties were not mentioned in the contracts. Firetti and Ran negotiated the contracts by phone and fax; Firetti signed for Global in Virginia and Weber signed for OTC in Nebraska. After the contracts were signed, Firetti, Ran, and Alece Tanner, the import coordinator for OTC, maintained constant communication by phone and faxes regarding the location of the goods and their date of arrival.

In May 1994 Firetti made a new proposal to Weber. He informed her that

---

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

Customs was contemplating imposition of anti-dumping duties on pencils made in certain Chinese factories. An anti-dumping duty is a special duty placed on goods to prevent importation of large quantities of the item into the United States. OTC had been the importer of record for the pencils and crayons up to this time and thus paid duties directly to Customs. There was evidence at trial from which the jury could find that Firetti suggested that Global now become the importer of record because it could switch factories and lower the cost of anti-dumping duties to OTC and that he represented that Global would deal directly with Customs, pay all duties, and bill OTC as anti-dumping duties were assessed. Based on Firetti's representations, OTC agreed on June 24, 1994 that Global would become the importer of record, deal directly with Customs, pay all duties, and bill OTC for the anti-dumping duties as they were paid. There is no indication in the record that Firetti and OTC ever discussed a new contract or changing terms in the written contracts. After Global became the importer of record, Ran arranged for Phil Patterson, Inc. (Patterson) to broker the pencils and crayons through Customs, but neither Firetti nor Ran told Patterson anything about anti-dumping duties. Two confidential forms filed with Customs by Patterson did not refer to any anti-dumping duties, and the estimates provided by Patterson to Global on the cost of clearing the goods through Customs did not include such duties.

Throughout July and August of 1994, Firetti and Ran submitted invoices to OTC which billed it for $360,886.32 in anti-dumping duties. This is the amount of damages OTC sought on its tort claims in this case and of the award by the jury. Both Firetti and Ran told OTC that the invoices for anti-dumping duties reflected the amount of money that was being deposited with Customs and that they must be paid by OTC so the goods could be released. Tanner, OTC's import coordinator, used automated broker software to estimate the amount of anti-dumping duties on the goods, and noticed that the software indicated such duties were not final. Tanner testified that she relied on representations by Firetti and Ran in deciding to pay the invoices since Global had exclusive control over the information concerning the amount actually being deposited

with Customs. OTC paid by transferring funds from its bank in Nebraska to Global's bank in Virginia. After Firetti and Ran deposited the funds in Global's account, they used them for normal operating expenses of their business. At the end of August, OTC and Global agreed that OTC would again become the importer of record because shipments from China were frequently delayed and the new arrangement had not saved OTC money.

In December 1994, Customs announced that no anti-dumping duties would be assessed. Tanner contacted Ran to inquire about a refund of the payments OTC had made for the duties. Ran promised to get back to OTC about its deposits, but he did not and none of the money was ever returned. OTC tried numerous times to obtain the refund, but Firetti took the position that Global had a right to retain the money even if none of it had been used for duties.

In December 1996, OTC sued Global in Nebraska state court for breach of contract and misrepresentation. The action was stayed pursuant to a clause in the contract requiring that any disputes be arbitrated in Washington, D.C. Global was subsequently dissolved, and OTC brought this action in state court against Firetti, alleging fraud, negligent misrepresentation, and conversion.

Firetti removed the case to federal court and filed a motion to dismiss for lack of personal jurisdiction. OTC then amended its complaint to add Ran as a defendant. The district court found that OTC had established a prima facie case of personal jurisdiction, and the matter went to trial. The jury found appellants liable for fraud, negligent misrepresentation, and conversion and returned a general verdict awarding OTC $360,886.52, the exact amount that OTC had paid Global for anti-dumping duties that were never assessed by Customs. Appellants each filed a motion for judgment as a matter of law or a new trial.

The district court ruled that it had personal jurisdiction over Firetti and Ran because they had intentionally directed their tortious conduct at residents of Nebraska and the brunt of the harm was felt there. The district court then denied both motions.

On appeal, Firetti and Ran argue that the district court lacked personal jurisdiction over them; that because OTC had contracts with Global it could not recover from Firetti and Ran in tort; that there was insufficient evidence of fraud, negligent misrepresentation, or conversion; and that the jury was not adequately instructed on their theory of the case. OTC responds that the appellants had sufficient contacts and effects in the state of Nebraska for the assertion of personal jurisdiction over them; that Nebraska law controls the issues of substantive law and does not bar OTC's claims; that there was sufficient evidence to support the verdict; and that the jury was instructed on their theory of the case.

II.

A.

Firetti and Ran argue that there was no personal jurisdiction over them in Nebraska. The district court's finding of personal jurisdiction is reviewed de novo. See Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). "A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991). Nebraska allows a court to exercise jurisdiction over a person "(a) [t]ransacting any business in th[e] state; (b) [c]ontracting to supply services or things in th[e] state; [or] (c) [c]ausing tortious injury by an act or omission in th[e] state. . . ." Neb.Rev.Stat. § 25-536 (1983). When a state construes its long arm statute to grant

jurisdiction to the fullest extent permitted by the Constitution as Nebraska has, the key question becomes whether the exercise of personal jurisdiction would comport with the due process clause. See Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 612 (8th Cir. 1994) (*citing* Stucky v. Stucky, 185 N.W.2d 656 (Neb. 1971)).

In order for there to be jurisdiction consistent with due process, OTC must establish that Firetti and Ran had sufficient minimum contacts with Nebraska so that "traditional notions of fair play and substantial justice" are not offended. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (*quoting* Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The appellants must have conducted themselves in such a way that they could "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). This "'fair warning' requirement is satisfied if the defendant[s] ha[ve] 'purposefully directed' [their] activities at residents of the forum. . . , and the litigation results from alleged injuries that 'arise out of or relate to' those activities. . . ." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal citations omitted).

Firetti and Ran argue that they did not have sufficient minimum contacts with Nebraska since they never entered the state and only made phone calls and faxes into Nebraska. The lack of physical presence in a state cannot alone defeat jurisdiction. See id. at 476. The litigation in this case arises out of what the jury found to be appellants' intentional tortious acts directed at residents of Nebraska where the brunt of the harm was felt. See Calder v. Jones, 465 U.S. 783, 789-90 (1984); Finley v. River N. Records, Inc., 148 F.3d 913, 916 (8th Cir. 1998). Firetti initiated a business relationship with OTC and negotiated contracts with Global. Later Firetti represented to Weber in Nebraska that Customs was going to impose new anti-dumping duties, that making Global the importer of record would save OTC money, that he would bill OTC at the same amount the new duties were assessed by Customs, and that he would

deposit the funds with Customs. After Global became the importer of record, Firetti and Ran made numerous phone calls and faxes and sent many invoices to OTC in Nebraska to implement their scheme. In these communications both appellants represented to OTC that invoices they sent indicated the amount of new duties Global was being assessed by Customs and the amount of funds they were depositing with Customs. They further indicated that the duties had to be paid before Customs would release the goods. The jury determined that representations made in these communications were fraudulent. By purposely directing their fraudulent communications at residents of Nebraska, the defendants should have realized that the brunt of the harm would be felt there, see Calder, 465 U.S. at 789-90, and they should have reasonably anticipated being haled into court there. The district court had personal jurisdiction over Firetti and Ran.

B.

Firetti and Ran argue that the district court improperly denied their motions for judgment as a matter of law. The denial of a motion for judgment as a matter of law and the district court's interpretation of applicable state law are reviewed de novo. See Hople v. Wal-mart Stores, 219 F.3d 823, 824 (8th Cir. 2000). In this diversity action, state law governs issues of substantive law, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), and the parties agree that Nebraska law applies.

Firetti and Ran argue that OTC's claims are really based on the two contracts between OTC and Global and so it cannot recover in tort. "To determine whether an action is based on a contract or a tort, a court must examine and construe the [] essential and factual allegations by which the plaintiff requests relief. . . ." Cimino v. FirsTier Bank, N.A., 530 N.W.2d 606, 612 (Neb. 1995). OTC did not sue Firetti and Ran for breach of contract, and they were not parties to the contracts between OTC and

Global.  See Edwin Bender & Sons v. Ericson Livestock Comm'n Co., Inc., 421 N.W.2d 766, 771 (Neb. 1988) (*citing* Suzuki v. Gateway Realty, 299 N.W.2d 762 (1980) ("'As a general rule, where an obligation is that of a principal, a court cannot enforce the obligation against the agent. . . .'") (citation omitted)).  Rather, OTC sued Firetti and Ran for their personal fraudulent and negligent oral misrepresentations, independent of the terms of the two written contracts, made in order to induce OTC to advance funds for anti-dumping duties which had not actually been imposed and for their conversion of the funds advanced by OTC for these duties.

Nebraska does not restrict contracting parties or their associates to breach of contract actions.  See, e.g., Streeks, Inc. v. Diamond Hill Farms, Inc., 605 N.W.2d 110 (Neb. 2000); Gibb v. Citicorp Mortgage, Inc., 518 N.W.2d 910 (Neb. 1994).  In Gibb a purchaser of real estate infested by termites was able to sue for fraudulent misrepresentation, concealment, and negligence even though there was a contract providing that the property was purchased "as is" and not subject to any representations of an agent.  See Gibb, 518 N.W.2d at 915-916, 918.  In Streeks the Nebraska Supreme Court affirmed a judgment for fraudulent concealment after concluding that the tort claim was not barred by a sale of goods contract.  See Streeks Inc., 605 N.W.2d at 123, 124.  The defendant in that case had argued that the exclusion of warranties and limitations of damages provisions in the contract barred recovery for fraudulent concealment, but the supreme court allowed the tort claim and concluded that the district court had "not abuse[d] its discretion in excluding the [] contract as irrelevant."  Id. at 123.  In deciding the case the Nebraska Supreme Court stated several related principles of law: "[A] purchaser is not limited to the contract when bringing claims against a seller, but may also bring claims for fraudulent concealment, fraudulent misrepresentation, and negligence."  Id. at 122.  "Nebraska's U.C.C. does not preclude an action for fraud. . . . 'Fraud and deceit provide a ground of recovery that is independent of contract or UCC.'"  Id. at 123 (*citing* Murray v. D&J Motor Co., Inc., 958 P.2d 823, 831 (Okl. Civ.  App. 1998)).

The appellants claim that Cimino supports their argument that Global's contracts bar OTC's claims against Firetti and Ran. The plaintiffs in Cimino alleged that the defendant bank breached an oral contract and also committed torts by refusing to consent to the sale of their company. See Cimino, 530 N.W.2d at 609-12. The court held that the plaintiffs failed to plead independent tort claims because each allegation "relate[d] directly" to the refusal of the defendant to consent to the sale, the very basis of the contract claim. See id. at 613. OTC's case is distinguishable from Cimino because OTC brought tort claims against third party officers and directors with whom it was not in privity of contract. OTC's claims do not rise out of the terms of its contracts with Global but out of misrepresentations made by Firetti and Ran which caused it to advance and lose funds. Moreover, Firetti and Ran can be personally liable under Nebraska law for their fraudulent and negligent misrepresentations even if they made them while acting as agents on behalf of Global, their principal. See Edwin Bender & Sons, 421 N.W.2d at 772; see also Huffman v. Poore, 569 N.W.2d 549, 557-58 (Neb. Ct. App. 1997).

Firetti and Ran also cite numerous cases from other jurisdictions where existence of a contract has barred recovery in tort. See, e.g., Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873 (8th Cir. 2000) (Minnesota); Maynard Coop., Co. v. Zeneca, Inc., 143 F.3d 1099 (8th Cir. 1998) (Iowa). Those cases are different from the one before the court, however. The plaintiff in Marvin Lumber, for example, brought contract and tort claims against a manufacturer with which it had contracted, challenging the quality of a wood preservative. See Marvin Lumber & Cedar Co., 223 F.3d at 875-76. The fraud claims were not independent of the contract and were barred. See id. at 885. Maynard Coop. involved a negligent misrepresentation claim about the defendant's product, but the misrepresentation fell within the contract warranty. See Maynard Coop., Co., 143 F.3d at 1102-3. In the present case, OTC is not claiming that Firetti and Ran misrepresented the quality of products covered by a contract. Rather, OTC alleged and introduced evidence to prove that Firetti and Ran,

two individuals not parties to the contracts with Global, made fraudulent and negligent misrepresentations on a subject independent of the contracts which induced OTC to advance supposedly owing anti-dumping duties.

We conclude that Nebraska law does not bar OTC from suing Firetti and Ran for the torts alleged. In this case OTC is not seeking damages or other remedies arising out of a breach of the written contracts between OTC and Global. Rather, it is seeking the return of the funds it advanced for anti-dumping duties Firetti told them about and Ran later assured them they would recover. The contracts in this case are "irrelevant" to the tort claims just as that in Streeks Inc., 605 N.W.2d at 123.

C.

Firetti and Ran also argue that the district court improperly denied their motion for judgment as a matter of law because there was insufficient evidence of fraud, negligent misrepresentation, or conversion. Reviewing the district court's decision de novo, judgment as a matter of law is appropriate "if during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party. . . ." FED.R.CIV.P. 50(a)(1); see Hople, 219 F.3d at 824. On such a motion the evidence must be viewed "in the light most favorable to the prevailing party, . . . assum[ing] as true all facts which the prevailing party's evidence tended to prove, [and] giv[ing] the prevailing party the benefit of all favorable inferences. . . ." Atlas Pile Driving Co. v. DiCon Fin. Co., 886 F.2d 986, 989 (8th Cir. 1989).

Firetti and Ran argue that OTC failed to prove the elements of misrepresentation of fact, reasonable reliance, and proximate cause required to make out claims of fraud and negligent misrepresentation. See Gibb, 518 N.W.2d at 916. They argue that their

representations were opinions regarding future government action, not representations of fact.  See Simon v. Wilkinson Agency, Inc., 518 N.W.2d 154, 157 (Neb. Ct. App. 1994).  The key representations made were not about the amount of duties the government might assess, however, but were rather about the basis for billing OTC and what would be done with the funds received.  Evidence was presented at trial that Firetti had assured OTC that making Global the importer of record would save OTC money.  Tanner testified that both Firetti and Ran said they needed the invoices paid so they could deposit the money with Customs before the goods would be released.  Firetti and Ran billed OTC for duties even though the estimates they received from Patterson did not include anti-dumping duties, and they never told the broker duties might apply.  The appellants represented that the amount of the duties charged on the invoices was the amount that Global was being charged by Customs.  These were misrepresentations of fact, and there was sufficient evidence to support findings to that effect.

Firetti and Ran also argue that OTC did not reasonably rely on their representations.  If a party exercises ordinary prudence, it is "justified in relying upon a representation made [] as a positive statement of fact, when an investigation would be required to ascertain its falsity."  Schuelke v. Wilson, 549 N.W.2d 176, 182 (Neb. 1996).  OTC relied on the representations by Firetti and Ran that they would pay the funds forwarded by OTC to Customs as duties were assessed.  OTC would have needed to conduct an investigation to have gained access to confidential forms filed with Customs to determine the actual facts.  The cases relied on by the appellants are inapposite because in them the plaintiffs had information in their possession that would have allowed them to determine the truth or falsity of the representations.  See id.; Circle 76 Fertilizer, Inc. v. Nelsen, 365 N.W.2d 460, 465 (Neb. 1985).  Both sides point to evidence in their favor, but there was sufficient evidence to support the jury finding of reasonable reliance.

Appellants argue that fraud was not the proximate cause of OTC's harm (loss of the funds advanced for anti-dumping duties) because OTC was required to pay all duties under its contracts with Global. "A proximate cause is a cause that produces a result in a natural and *continuous* sequence, and without which the result would not have occurred." Sacco v. Carothers, 567 N.W.2d 299, 306 (Neb. 1997). The provision in the contracts on which Firetti and Ran rest is the statement that goods were to be "F.O.B. Hong Kong." OTC does not contest that this term made it responsible for duties assessed by Customs, but Customs never assessed any anti-dumping duties. Tanner testified that OTC would not have released payments for such duties if Firetti and Ran had not represented that they were owed and that OTC's payments were being deposited with Customs. There was sufficient evidence to support the jury finding that the misrepresentations were the proximate cause of OTC's damages.

Appellants also argue that no conversion occurred. Tortious conversion is any act of control wrongfully asserted over another's property. See Zimmerman v. FirsTier Bank, N.A., 585 N.W.2d 445, 451 (Neb. 1998). An officer of a corporation can be "personally liable if the officer or agent causes a conversion of another's property, and it is no defense that such officer or agent converted the property while acting for the corporation." Hecker v. Ravenna Bank, 468 N.W.2d 88, 95 (Neb. 1991). Firetti and Ran obtained funds from OTC by misrepresentations separate from the terms of the contracts between OTC and Global, and they used the funds for normal operating expenses rather than the purpose for which they were obtained. There was sufficient evidence for a reasonable jury to find that Firetti and Ran wrongfully took possession of OTC's funds.

D.


Appellants argue that the jury instructions did not present their theory of the case and misstated Nebraska law and that the district court therefore erred in denying their motions for a new trial. The instructions given to the jury and the denial of the motion for a new trial are both reviewed under an abuse of discretion standard. See Wood v. Minnesota Mining & Mfg. Co., 112 F.3d 306, 311 (8th Cir. 1997). "[R]eview is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Klisch v. Meritcare Med. Group, Inc., 134 F.3d 1356, 1358 (8th Cir. 1998). The court need not adopt the language offered by the parties but must give an "instruction reflecting that party's theory of the case if the instruction is legally correct and there is evidence to support it." Essco Geometric v. Harvard Indus., 46 F.3d 718, 727 (8th Cir. 1995).


The main argument of Firetti and Ran in regard to the instructions is that the court should have granted a new trial because their theory of the case was not adequately presented to the jury. Their theory was that the contractual relationship with Global eliminated any tort claims and that the contracts allowed Global to keep funds advanced by OTC. As we have already explained, the contractual relationship does not bar the tort claims against Firetti and Ran so the court did not err in not giving an instruction to the contrary. OTC responds to the second argument that Instruction 11 was given to the jury and reflected appellants' theory about their right to retain the funds. That instruction stated in part:


the defendants represented to plaintiff that Global would pay the 'anti-dumping' duties assessed by Customs and if the amount assessed was

> greater than the payment made by Oriental, Global would pay the increased duties, but if the duties were less, Global would retain any unused portion of these amounts paid. . . . Defendants further deny that they converted the money by refusing to return it because defendants claim they had a right to possession of the money.

This was a sufficient instruction under the circumstances, and the district court did not abuse its discretion in declining to give the exact instruction offered by the appellants.

Firetti and Ran allege five other instructional errors that are without merit. They complain about the definition of "F.O.B.," but it was correct under Nebraska law. See Storz Brewing Co. v. Brown, 47 N.W.2d 407, 410-11 (Neb. 1951). The elements of conversion in Instruction 21 were also stated correctly. See Zimmerman, 585 N.W.2d at 451-52. Appellants argue that the court should have listed each misrepresentation and that it incorrectly stated the elements of negligent misrepresentation. The court referred to the evidence on which the misrepresentation claim was based in Instruction 11 and did not err in defining the elements of negligent misrepresentation. See Gibb, 518 N.W.2d at 922. They also allege that the district court inserted contract concepts of "good faith" and "fair dealing" into this tort action. The terms were not used in a contract context, but rather in describing honesty in a way similar to that of the Nebraska Supreme Court. See id. at 921; Olson v. Union Fire, Ins., Co., 118 N.W.2d 318, 322 (Neb. 1962). Finally, appellants argue that Instruction 17 omitted the requirement of ordinary prudence. See Schuelke, 549 N.W.2d at 182. The court correctly defined reasonable reliance, however, and the concept of reasonableness was included in the instruction. See id. The instructions are to be taken as a whole. See Klisch, 134 F.3d at 1358. We find no abuse of the court's discretion.

III.

After a thorough review of the record, we conclude that the district court had personal jurisdiction over appellants, that OTC's tort action was not barred, that there was sufficient evidence to support the verdict, and that the jury was adequately instructed. The district court did not err in denying appellants' post trial motions, and we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.