# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 00-2734

_____

| | |
|---|---|
| Jane M. Foster, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the Western District |
| | * of Arkansas. |
| Time Warner Entertainment Company, | * |
| L.P., | * |
| | * |
| Defendant-Appellant. | * |

_____

Submitted: April 9, 2001
Filed: May 24, 2001

_____

Before WOLLMAN, Chief Judge , MURPHY, Circuit Judge, and PIERSOL,[1] District
Judge.

_____

MURPHY, Circuit Judge.

Jane M. Foster sued Time Warner Entertainment Company, L.P. (Time Warner)
alleging that she was terminated for conduct protected under the Americans with
Disabilities Act (ADA), 42 U.S.C. § 12203(a). The jury returned a verdict finding that

[1]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court
for the District of South Dakota, sitting by designation.

Time Warner had terminated Foster in retaliation for opposing unlawful discrimination under the ADA. It awarded lost wages and compensatory and punitive damages. After judgment was entered, Time Warner moved for judgment as a matter of law, a new trial, or remittitur. The district court[2] denied the motions, and Time Warner appeals. We affirm.

Foster was employed by Time Warner as a supervisor of customer service representatives in Fayetteville, Arkansas. One of the employees she supervised was Kevin Terry who suffered from nocturnal seizures due to epilepsy. On this appeal, the evidence must be viewed in the light most favorable to Foster, the prevailing party, "'assum[ing] as true all facts which the prevailing party's evidence tended to prove, [and] giv[ing] the prevailing party the benefit of all favorable inferences. . . .'" Oriental Trading Co., Inc. v. Firetti, 236 F.3d 938, 945 (8th Cir. 2001) (citation omitted).

Terry told Foster that it was difficult for him to arrive at work consistently on time in the morning because of his seizures. He also indicated that he had more seizures on the weekend and might often miss some work on Mondays. The Time Warner Human Resources Manual included epilepsy in its definition of disability under the ADA and mentioned a flexible schedule as an example of a reasonable accommodation. Cathy Hill, the previous manager of the office and supervisor of Foster, had previously accommodated Terry by allowing him to arrive at work after the regular starting time in the morning and to stay later in the evening to make up the missed time. When Cindy Snyder replaced Hill as the supervisor of the Fayetteville office, she managed it from Memphis, Tennessee. The Fayetteville office was then supervised by Foster and Melanie Wilkerson, the technical supervisor.

---

[2]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

One day Terry told Foster that his medication had been changed and that as a result he was experiencing more frequent seizures. He said this increase should last for about two months and requested a temporary adjustment in the flexibility accommodation to his work schedule. He came to work later more often after requesting the adjustment.

The accommodation to Terry's work schedule angered coworkers, and Wilkerson and others complained about it to Snyder. When Snyder told Foster about the complaints, Foster told her that Terry was covered by the ADA and that he should receive the accommodation mentioned in the company manual. Because of the complaints, Snyder issued a new sick leave policy prohibiting employees from making up time missed because of illness. Foster repeatedly questioned Snyder about the new policy's effect on Terry's accommodation. Snyder told Foster on one occasion that she had checked with Human Resources and was told Terry "needs to come to work" and "needs to take sick time."

Even though Time Warner managers receive some discrimination training, Snyder told Foster to "let [her] worry about the ADA," that it was "none of [Foster's] business," that "we don't have to follow the ADA," and "I don't care about the policy [in the manual]." On March 21, 1997, Snyder wrote a memo on some of her discussions with Foster about Terry's accommodation which said in part:

> [Foster] says that [Terry] is out quite a bit, but she had been letting him make it up because he is covered by the ADA. I told her that the ADA doesn't say he doesn't have to come to work every day and that it doesn't mean we have to let him make it up. I told her – she was to follow the policy that I had put out – which was that sick time was not to be made up. By him or anyone else.

In another memo written that day Snyder noted:

> (Bruce & I) Spoke, with Jane regarding Kevin Terry's absences. I let her know that altho [sic] Kevin is covered under ADA . . . . He should not be treated any different than any other employee. i.e., . . . . Sick time off is not to be 'made up' by him or anyone else . . . I let [Foster] know that I had been hearing complaints from her staff that [Terry] was getting special treatment.

After the new sick leave policy was issued, Foster allowed Terry to continue to work a flexible schedule.

Neither Foster nor Terry was aware that Snyder had asked Wilkerson to monitor Terry's work hours. Snyder gave this assignment to Wilkerson even though she knew she was upset with Terry for filing a grievance against one of the employees she supervised. Wilkerson told Snyder that Terry was absent from work on five occasions when he had claimed on his time sheets that he worked a full day, that he was absent from work about once a week, that others had to do his job, and that he claimed to have worked overtime on various occasions. Since the company time sheets recorded the number of hours worked but not the specific times, it was possible that Terry could have worked after Wilkerson left for the day. A coworker testified that many times when she was called in late at night, Terry would be there working. Without verifying Wilkerson's reports on Terry by use of computer logs or alarm codes, Snyder and her supervisor, Bruce Simmons, discharged Terry for falsifying his time sheets. Terry denied making false reports and pointed out that his work had always been completed. Simmons told Terry that he wanted to keep him but that his coworkers were complaining about his special arrangement.

After Terry was fired, Snyder and Simmons met with Foster and told her they were going to terminate her for colluding with Terry in falsifying his time sheets. At that meeting Foster asked Snyder and Simmons to show her his time sheets, but they

refused. Foster also retrieved the Time Warner employment manual and showed both Snyder and Simmons the parts of the company disability policy listing epilepsy as a protected condition and indicating that a flexible schedule was an appropriate accommodation. Snyder and Simmons responded that they did not have to give Terry an accommodation.

After her termination, Foster sued Time Warner under the ADA, 42 U.S.C. § 12203(a). She alleged that she was fired in retaliation for opposing the removal of Terry's accommodation and for opposing his termination in violation of the ADA. The matter went to trial, and the jury returned a verdict finding that Time Warner terminated Foster in retaliation for engaging in conduct protected by the ADA. The jury awarded her $33,515.28 for lost wages and benefits, $75,000 in compensatory damages, and $136,000 in punitive damages. After judgment was entered, Time Warner moved for judgment as a matter of law and alternatively for a new trial or remittitur. The district court denied the motions.

On appeal Time Warner argues that Foster failed to produce sufficient evidence that she engaged in statutorily protected conduct, that there was a casual connection with her termination, and that she was entitled to damages. In the alternative, it asserts that the damage awards were excessive and that the court erred in evidentiary rulings and instructing the jury. The denial of a motion for judgment as a matter of law is reviewed de novo. See Douglas County Bank & Trust Co. v. United Fin. Inc., 207 F.3d 473, 477 (8th Cir. 2000). Judgment as a matter of law is proper "'only when there is a complete absence of probative facts to support the conclusion reached' so that no reasonable juror could have found for the nonmoving party." Blackmon v. Pinkerton Sec. & Investigative Servs., 182 F.3d 629, 635 (8th Cir. 1999). The denial of a motion for a new trial or remittitur will only be reversed upon a "manifest abuse of discretion" or because the verdict is so grossly excessive as to shock the conscience. American

Bus. Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1146 (8th Cir. 1986).[3]

The ADA "prohibits discrimination against an individual because that individual 'opposed any act or practice made unlawful by [it] . . . .'" Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999) *quoting* 42 U.S.C. § 12203(a). To make out a retaliation claim a plaintiff must show "(1) that [s]he engaged in statutorily protected activity, (2) that an adverse action was taken against [her], and (3) a casual connection between the adverse action and the protected activity." Id. An employee engages in protected activity when she opposes an action "based on a reasonable belief that [her] employer has engaged in discriminatory conduct, . . . and it can include refusal to implement a discriminatory policy." E.E.O.C. v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998) (internal citation omitted). A manager may be shown to have engaged in protected conduct if she refused to implement a discriminatory policy or took some action against it. See id.

Time Warner argues that Foster did not establish that she opposed Time Warner's new sick leave policy or that she had an objective good faith belief that she was opposing a discriminatory practice. There was evidence that Foster repeatedly questioned Snyder about how the new sick leave policy affected Terry's reasonable accommodation, and the two had a continuing discussion on the subject. Although Snyder said that Terry was not to make up sick time, Foster continued to allow him to work a flexible schedule. Foster thus refused to implement the sick leave policy, in this way stepping outside the normal role of a manager. See id.

---

[3]Time Warner has not argued that the punitive damages award violated its right to due process which would require a de novo review of the denial of its motion, see Cooper Indus., Inc. v. Leatherman Tool Group, Inc., --- S.Ct. ---, 2001 WL 501732 (May 14, 2001), but our ultimate conclusion would be the same under that standard.

Time Warner also argues that Foster failed to show she had a good faith reasonable belief that it was violating the ADA.  It asserts that Terry was not protected by the ADA because his temporary increase in seizures did not substantially impair any major life activity, that reliable attendance is an essential function of the job, and that the ADA does not entitle an employee to choose his own schedule.

In order to prevail on her retaliation claim, Foster "need not establish the conduct which she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying conduct violated the law."  Buettner v. Arch Coal Sales, Co., Inc., 216 F.3d 707, 714 (8th Cir. 2000) (Title VII); see also Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (ADA).  Proof of a retaliation claim is not the same as a direct claim of disability discrimination.  See Buettner, 216 F.3d at 714.

Foster consulted Time Warner's manual in the course of dealing with Terry, and it listed epilepsy as a disability protected under the ADA,[4] and it included a  modified work schedule as an example of a reasonable accommodation.[5]  The evidence showed that Foster's previous supervisor, Cathy Hill, had provided Terry with that type of accommodation.  When Snyder succeeded Hill and issued a new sick leave policy,

---

[4]"A disability means a physical or mental impairment that substantially limits one or more of the major life activities, a record of such impairment, or being regarded as having such an impairment . . . .  The definition does not include:  compulsive gambling, pregnancy, homosexuality, bisexuality, current chemical dependency, or temporary nonchronic impairments.  Alcoholism is considered a disability if a person has undergone treatment for it in the past or is presently under treatment.  According to this definition, other disabilities include . . . epilepsy . . . ."  Time Warner Human Resources Manual, *Americans With Disabilities Act*, p.1.

[5]"Reasonable accommodations include: . . . Modifying work schedules."  Time Warner Human Resources Manual, *Americans With Disabilities Act*, p.1-2.

Foster repeatedly asked how she should accommodate Terry because she believed the new policy conflicted with the manual. There was sufficient evidence that Snyder admitted to Foster that Terry was covered by the ADA. Although there was conflicting evidence, the jury chose to believe that offered by Foster, and the evidence was sufficient for the jury to find that Foster had an objectively reasonable belief that Time Warner was violating the ADA.

Time Warner also contends that Foster failed to prove that her termination was caused by protected conduct. It argues that a temporal connection is not enough, that the discussions with Snyder did not prove animus, and that Foster did not prove her dismissal was caused by anything other than collusion with Terry in falsifying his time sheets. Foster presented evidence of an ongoing struggle with Snyder about the meaning and interpretation of the new policy and her refusal to implement it. There was also evidence that at the meeting at which Foster was terminated she showed Snyder and Simmons the company manual listing epilepsy as a protected condition under the ADA and a flexible schedule as a reasonable accommodation. Foster established a temporal connection between her requests for accommodating Terry's disability and her termination, permitting an inference of retaliation. See HBE Corp., 135 F.3d at 554-55.

Time Warner asserts that Foster failed to meet her burden of persuasion because she did not show that the stated reason for discharge was pretextual and that the real reason was retaliation. Foster had the ultimate burden of proving intentional retaliation. See Ryther v. Kare 11, 108 F.3d 832, 837-38 (8th Cir. 1997) (en banc). Foster presented evidence that Terry did not falsify his time sheets, that Terry's work had all been done, that other employees saw him working late at night, that a worker antagonistic to Terry had been enlisted by Snyder to check on him, that Time Warner did not verify Wilkerson's reports, and that time sheets only reflected the total time worked. This was sufficient evidence on which a reasonable jury could find that

-8-

collusion was only a pretext. In addition there was evidence that Snyder said she did not care about the ADA, that Foster made repeated inquiries about Terry's accommodation, and that Foster was discharged shortly after her protected conduct. There was sufficient evidence to find intentional discrimination.

Time Warner argues that Foster failed to produce sufficient evidence of emotional distress because she did not suffer physical injury, seek medical treatment, or have difficult in finding another job, and that the award was grossly excessive. Compensatory "damages for emotional distress must be supported by competent evidence of 'genuine injury.'" Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 531 (8th Cir. 1999) (citation omitted). Foster presented the testimony of her husband that she became withdrawn and could not eat and that she experienced back pain, muscle stress, and stomach problems. See Kim v. Nash Finch Co., 123 F.3d 1046, 1065 (8th Cir. 1997) (corroboration by family members sufficient). He also testified that at the time of trial she was still not fully recovered. Foster testified that she was devastated by being accused of collusion and terminated, that she withdrew, and that she feared she would not be able to find another job. There was sufficient evidence, and the $75,000 awarded was not so excessive as to shock the conscience. See id. ($100,000 for emotional distress upheld where family members corroborated physical signs of distress and humiliation); Morse v. Southern Union Co., 174 F.3d 917, 925 (8th Cir. 1999).

Time Warner also contends that Foster failed to produce sufficient evidence to support punitive damages because it had acted with a legitimate business purpose and the punitive award was grossly excessive. Punitive damages are appropriate if an employer engaged in intentional discrimination with "'malice or reckless indifference to the [plaintiff's] federally protected rights.'" Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999) (citation omitted). Foster presented evidence that both Snyder and Simmons knew and admitted that Terry was covered by the ADA and that the

company's own manual listed a flexible schedule as a reasonable accommodation. Malice may be imputed to the employer if the employee who committed the act is serving in a "managerial capacity" and "acting in the scope of employment." Id. at 543 (citation omitted). Time Warner does not dispute that Snyder or Simmons were mangers acting within the scope of their employment. Foster reminded Snyder and Simmons on numerous occasions, including the meeting at which she was discharged, that Terry was covered by the ADA and should receive an accommodation and that his disability had been accommodated. Snyder made comments to Foster such as "let me worry about the ADA," "none of your business," "we don't have to follow the ADA" and "I don't care about the policy." Snyder also commissioned an employee antagonistic to Terry to conduct surveillance of him. Time Warner introduced its policy on the ADA as evidence of its good faith effort to comply with the law, but the policy did not address retaliation for opposing discriminatory conduct. The mere existence of a policy is not enough to establish good faith if there is evidence that managerial employees disregarded it in making employment decisions and issued a conflicting policy. See Ogden v. Wax Works, Inc., 214 F.3d 999, 1010 (8th Cir. 2000). Foster presented sufficient evidence to support an award of punitive damages.

Relevant factors as to whether punitive damages are grossly excessive are "the degree of reprehensibility of the defendant's conduct, the ratio or relationship between the actual harm inflicted on the plaintiff and the punitive damages award, and civil penalties authorized or imposed for comparable misconduct." Kim, 123 F.3d at 1067. The $136,000 punitive damages award was supported by the evidence, it was only 1.8 times the actual damages, see Kimbrough v. Loma Linda Dev., Co., 183 F.3d 782, 785 (8th Cir. 1999) (upholding a ration of 10 to 1), and it is not dissimilar to others we have approved. See Morse, 174 F.3d at 925-26 (listing larger punitive damages awards upheld to deter employment discrimination). The award was not grossly excessive.

Time Warner argues that the district court erred in denying its alternative motion

for a new trial or remittitur because an evidentiary ruling and jury instructions substantially prejudiced it. The denial of a motion for a new trial is reviewed for an abuse of discretion. See Bevan v. Honeywell, Inc., 118 F.3d 603, 612 (8th Cir. 1997). A new trial is only appropriate if the verdict was against the great weight of the evidence so as to constitute a miscarriage of justice. See Ogden, 214 F.3d at 1010.

Time Warner argues that it was substantially prejudiced by admission of coworkers remarks about Terry without a limiting instruction. It says these were stray remarks by non decision makers. The standard for review of admission of evidence is abuse of discretion, and a "new trial is not warranted . . . unless the evidence was so prejudicial that a new trial would likely produce a different result." Id. at 1011. Part of Foster's theory of the case was that coworkers were annoyed by Terry's accommodation and that management removed his accommodation and terminated Terry because of biased complaints. Simmons stated at Terry's termination meeting that he would like to keep him but there were too many complaints about his "special treatment." The district court did not abuse its discretion in allowing this evidence since it was relevant on the issues of intent and pretext and the probative value outweighed any prejudicial effect.

Time Warner also argues that the district court erred in instructing the jury on the relevant law for retaliation and damages. The instructions given to the jury are reviewed for an abuse of discretion. See Oriental Trading Co., 236 F.3d at 946. "[R]eview is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Klisch v. Meritcare Med. Group, Inc., 134 F.3d 1356, 1358 (8th Cir. 1998). The court correctly instructed the jury that Foster had to prove that she had an objectively reasonable belief that Time Warner's treatment of Terry violated the ADA, not that it actually was in violation of the law. The jury was instructed that it should determine whether Foster had a reasonable good faith belief

-11-

that Terry was a qualified individual entitled to a reasonable accommodation which was not an undue hardship, and ultimately if she had engaged in protected conduct. See HBE Corp., 135 F.3d at 554. The court also correctly used the Kolstad standard to instruct the jury on punitive damages that Time Warner must have acted with malice or reckless indifference to a federally protected right, and also instructed that the jury "should not award damages if the acts of Time Warner's managers were contrary to its good faith efforts to comply with federal law." See Kolstad, 527 U.S. at 545. The instructions on Foster's claim of retaliation and punitive damages adequately stated the law. Finally, the defense to damages instruction in 42 U.S.C. § 1981a(a)(3) requested by Time Warner was not appropriate because Foster's was a claim for retaliation under 42 U.S.C. § 12203(a), not a claim for failure to provide an accommodation under § 12112(b)(5). See E.E.O.C. v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1285 (7th Cir. 1995).

After a thorough review, we conclude that the district court did not err in denying Time Warner's motions for judgment as a matter of law, a new trial, or remittitur. The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-